C. E. LE MASTER V. FORT WORTH TRANSIT COMPANY ET AL.

No. 7804. Decided February 18, 1942.
Rehearing overruled March 25, 1942.
(160 S. W., 2d Series, 224.)

*Martin, Moore & Brewster,* of Fort Worth, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that plaintiff was guilty of contributory negligence in not keeping a proper lookout and in driving closer to the bus than a reasonable prudent person would have done under the circumstances, Smith v. Kansas Ry. Co., Mo. App., 258 S. W. 458; Parker v. Jakovich, 115 S. W. (2d) 790; Paris & G. N. Ry. Co. v. Stafford, 53 S. W. (2d) 1019.

*Canty, Hanger, McMahon, McKnight & Johnson* and *W. D. Smith,* all of Fort Worth, for defendant in error.

MR. JUSTICE CRITZ delivered the opinion of the Court.

514

This suit was filed in the District Court of Tarrant County, Texas, by C. E. LeMaster against Fort Worth Transit Company and A. F. Townsend, Receiver of Northern Texas Traction Company, to recover damages for personal injuries received by himself and his wife as the result of a collision between LeMaster's car and a bus belonging to the defendant. LeMasters also sought recovery for damages to his car. Trial was had in the district court with the aid of a jury. At the close of the evidence the defendants moved for an instructed verdict. The motion was overruled, and the case was submitted to the jury on special issues. The jury returned answers which convicted the operator of the bus of negligence, which proximately caused LeMaster's damages, in suddenly stopping the bus. The jury acquitted LeMaster of all acts of contributory negligence charged against him by the defendants.

After the above verdict was received by the court, defendants, moved for a judgment non obstante veredicto under the provisions of Article 2211, Vernon's Texas Civil Statutes. After due notice and hearing, this motion was sustained, and judgment entered that LeMaster take nothing and pay costs. On appeal by LeMaster, this judgment was affirmed by the Court of Civil Appeals. 142 S. W. (2d) 908. LeMaster brings error.

As we interpret the opinion of the Court of Civil Appeals, it holds that the judgment non obstante veredicto was proper, not because the jury finding of negligence on the part of the bus driver was without support in the evidence, but because the evidence shows conclusively that LeMaster was guilty of contributory negligence,—that is, negligence which contributed to cause his own injury.

LeMaster testified in the case as a witness in his own behalf. In the light of the jury's verdict, in his favor, we must view LeMaster's testimony, as well as all other testimony in the record, from a standpoint most favorable to him. So viewed, LeMaster's testimony shows the following facts: That LeMaster was driving west along East Lancaster Avenue; that the bus came into such avenue just ahead of LeMaster's car, and turned west down the same; that this was in the direction of Chambers Street, which ran at right angles to East Lancaster Avenue; that when the bus came into East Lancaster Avenue, ahead of LeMaster's car, he, LeMaster, had to slow down very nearly to a stop, to permit the bus to enter in front of him; that when the bus entered East Lancaster Avenue it started

down the same; that LeMaster followed the bus, immediately behind it; that when LeMaster started following the bus he was about thirty or forty feet from its rear end; that the bus was traveling about seventeen or eighteen miles per hour; that LeMaster got closer than thirty or forty feet when they were in the block next to Chambers Street, very near the place where the collision occurred; that within such block LeMaster's car got within ten or twelve feet of the bus; that at that time Le-Master started to pull around the bus; that the bus had just entered Chambers Street when LeMaster started to pull around it; that just when the bus entered Chambers Street and Le-Master started to pull around it, the bus stopped; that when the bus stopped LeMaster tried to cut to the left, but hit it; that the right-hand front of the LeMaster car struck the left rear end of he bus; that the bus just stopped. At this point LeMaster was asked if the bus came to a gradual or a sudden stop, and answered "No, it just stopped." When asked to give "some idea with his hand, or fingers, or something, just how it stopped," LeMaster answered: "Well, it just sat down right there and stopped * * *."

LeMasters further testified: That the operator of the bus gave no warning of his intention to stop, prior to the time the bus was suddenly stopped, and that the bus operator gave no indication of his intention to stop prior to the time the bus was stopped. LeMaster further testified: That he was familiar with East Lancaster Avenue, and had been traveling it for about four years; that he knew that buses stopped at Chambers Street; that the points where the buses stopped were marked with signs; that the buses usually stopped with their front ends opposite the stop signs; that there was a bus stop sign at the intersection of East Lancaster Avenue and Chambers Street; that such sign had been there a long time; that he, LeMaster, was familiar with such sign; that on the occasion of this accident the bus passed the bus stop sign at the intersection of East Lancaster Avenue and Chambers Street; that such bus did not stop until the rear end of the bus was about eight feet past the bus stop sign; and that about the time the bus came to a stop at the point above designated, LeMaster turned his car to the left just as far as he could.

On cross examination LeMaster, among other things, testified: That he did not try to stop his car when the bus stopped, because he did not have time to do so. On further cross exami-

nation he testified: "Whenever I whirled I might have just stomped the whole brake off, I could not say. And that was done so quick. Naturally a man would stomp his brakes the first thing. I might have. But to say as a fact, I don't know whether I even picked my feet up or not." On further cross examination LeMaster testified: That he was ten or twelve feet from the bus when it stopped; that he had just cut his wheel to pass when the bus stopped; that when he realized the bus was stopped he expected he was six feet from it; that when he realized the bus was stopped, he was so close to it that he could not stop in time to keep from running into it; that he did not notice that the bus was slowing down before it stopped; that the bus did not slow down any before it stopped; that as he approached Chambers Street he was traveling behind the bus at the same speed it was traveling; that about the time the bus passed the stop sign above mentioned he decided to pass it, and increased his speed and started to turn to the left, when the bus suddenly stopped without warning, and the collision occurred.

There is abundant testimony in this record showing: That on this occasion this bus was in good condition; that it was equipped with adequate brakes, in good working order; that it was equipped with signal lights on the rear, which gave adequate and proper warning when the bus was being brought to a stop; that these signal lights came on when the brakes of the bus were pressed by the bus operator, but not before; that on this occasion the bus traveled down East Lancaster Street at a proper rate of speed; that when it came to Chambers Street it stopped at the stop sign there located; that it did not pass such stop sign; that it came to a gradual and not a sudden stop at Chambers Street; that in coming to a gradual stop its rear signal lights were on, thereby giving full and adequate warning to LeMaster that the bus was about to stop at the stop sign; that such warning was given in time for LeMaster to avoid colliding with the bus; that LeMaster knew where the stop sign was, and that in spite of all this LeMaster drove his car into the rear end of this bus.

■ We agree with the holding of the Court of Civil Appeals, that there is evidence in this record sufficient in law to show that the driver of this bus was guilty of negligence, which was the proximate cause of LeMaster's damages, in bringing this bus to a sudden stop, in the way and manner detailed in LeMaster's testimony.

■ It is settled as the law of this State that the defendant in a negligence action, who pleads contributory negligence on the part of the plaintiff as a defense, must assume the burden of proving it. 30 Tex. Jur., p. 810. It follows that a jury issue was presented in this case, unless it can be said that the evidence contained in this record conclusively shows that LeMaster was guilty of contributory negligence. Of course, if a jury issue was presented, the jury's finding should have been given effect. Under the plain provisions of Article 2211, supra, a jury's verdict cannot be ignored, unless it can be said that it is without support in the evidence, or is contrary to the conclusive evidence.

It is not possible for this Court to define to an absolute certainty the kind and quantity of evidence that is sufficient in law to show either negligence or contributory negligence. Every negligence case differs in some respects from every other negligence case. The trial court gave the usual charge defining ordinary care and negligence. The rule is that, if the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting, but reasonable minds might differ as to its effect, still a fact issue is presented. Measured by these rules, we are of the opinion that the evidence contained in this record does not show conclusively that LeMaster was guilty of negligence which contributed to cause this collision and its resulting injuries and damages. When we consider LeMaster's testimony, it shows, or tends to show, that while he was following this bus it suddenly stopped. without any warning whatever, at a point where he did not expect it to stop, and where he had a right not to so expect. In this connection, it is true that LeMaster testified that just before this collision occurred his car was less than ten feet from this bus; but this was at a time when he had decided to pass, and while, according to his testimony, the bus was giving no signal or sign of coming to a halt. Naturally, if the car struck the bus, there had to be a time when it was less than ten feet from the bus.

There is evidence in this record tending to show that LeMaster was driving his car too fast and too close to the rear end of this bus. Also, this record contains evidence tending to show that LeMaster ran his car into the rear end of this bus while it was stopped at the proper place, and in spite of the fact that it came to such stop gradually, after it had given

full warning that it was doing so. This evidence, however, was not conclusive. It merely contradicted LeMaster's testimony, and therefore presented fact issues for the jury.

The judgments of the Court of Civil Appeals and the district court are both reversed, and this cause is remanded to the district court with instructions to enter judgment on the verdict of the jury in favor of C. E. LeMaster. After the entry of such judgment, conditions and rights as between the parties will be the same as though the judgment of the district court here directed had been entered without this appeal. These defendants may present their motion for new trial. The trial court may either grant or refuse such motion, as he may determine. If the trial court should overrule such motion, the defendants may have their appeal. McAfee v. Travis Gas Corp., 137 Texas 314, 153 S. W. (2d) 442.

■ Finally, we wish to call attention to a certain portion of Rule 324 of "Texas Rules of Civil Procedure." Among other things, such rule provides:

"Provided, however, that when the judgment is rendered non obstante veredicto, or notwithstanding the jury finding on one or more special issues, the appellee may complain of any prejudicial error committed against him over his objection on such trial."

This case was tried and appealed before the effective date of the above-quoted provision of Rule 324. We therefore do not apply it here. We deem it proper, however, to call attention to the fact that it will be the duty of this Court to apply such provision in cases where judgment non obstante veredicto was rendered subsequent to its effective date. We interpret the above-quoted provision to mean that where on appeal the appellate court determines that judgment non obstante veredicto was erroneously entered, such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict, unless the appellee is able to present such error against himself as would have prevented an affirmance of the judgment had one been entered by the trial court in harmony with the verdict. The filing of points of error by the appellee will be treated as a necessary prerequisite to the right to have such errors considered on appeal. It will be sufficient for the appellee to present his points of error in his brief. Rules 374, 418b, 420.

Opinion delivered February 18, 1942.

Rehearing overruled March 25, 1942.