Ross McELREATH, Appellant,

v.

Jean McELREATH, Appellee.

No. 938.

Court of Civil Appeals of Texas, Tyler.

Sept. 16, 1976.

Bert L. Clardy, Law Office of Hugh E. McGee, Jr., Houston, for appellant.

William Emerson Wright, Houston, for appellee.

DUNAGAN, Chief Justice.

Appellee, Jean McElreath, brought this suit in the 127th District Court of Harris County, Texas, for the recovery of principal, interest and attorneys' fees on two (2) promissory notes. The larger of the two notes, which was in the original principal amount of $25,200, contained an optional acceleration clause and is the note involved in this appeal. Trial was to the court and resulted in judgment in favor of appellee. No appeal was taken from the judgment on the smaller note. Therefore, this appeal involves only the larger note.

Pursuant to appellant's request, the trial court prepared and filed its findings of fact and conclusions of law.

Appellant by his first two points of error contends that the trial court erred in granting appellee judgment after appellee rested her case because (1) there is no evidence or (2) in the alternative insufficient evidence that the appellee made formal demand on appellant for the payment of the past due installments on the $25,200 note before accelerating the maturity of the unpaid principal balance.

By his third point appellant contends that the court erred "in entering Judgment for Appellee for the balance of principal plus interest and attorney's fees" on the note in question "because under the facts and circumstances of the case, it would be unjust and inequitable to permit Appellee to accelerate the maturity of such note."

" * * * In determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. The findings of fact and

the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it." *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 301 (Tex.1963).

The note in question was executed by Ross McElreath, the appellant, on February 7, 1967, in favor of Jean McElreath as a part of the community property settlement between the parties in connection with divorce proceedings heard on that date. The note was non-interest bearing prior to maturity and provided for principal to be paid in installments of $150 per month until paid in full. According to the testimony of the appellee, payments on this note were made regularly, if not always timely, from February, 1967 until August, 1972. Appellee claims she did not receive the installment payments on the note here involved due for August and September, 1972; that appellant made the installment payment due October 5, 1972, but thereafter made no payments whatsoever on the note in controversy.

On January 24, 1973, appellee, upon election to accelerate maturity by virtue of appellant's failure to make installment payments under the provisions of the note, filed suit for breach by default seeking recovery of the principal unpaid balance on the larger note in the sum of $15,300, together with contractual attorneys' fees and interest subsequent to default.

The factual controversy between the parties at the trial in the court below, as well as upon this appeal, deals with the questions of whether appellant had, in fact, paid the delinquent installment payments in issue and whether he was afforded notice of an opportunity to pay through proper demand for payment from appellee.

The only testimony presented in the case was from the parties themselves. Mrs. McElreath, the appellee, testified that she did not receive the $150 installments due on the note for August 5 or September 5, 1972; that on September 9, 1972, she called appellant and advised him that she had not received such installment payments; that appellant said "he couldn't afford it"; that appellant told her that he had not mailed the checks. He said things were "tight right then." Late in October, appellee received a $150 installment payment denominated as the October payment, which was due October 5th. She further testified that she did not receive a payment for the November installment; that in December or late November she again spoke with appellant by telephone and informed him that she had not received the note payments. Appellee testified that she told him she wished he would "catch up" and that in reply he said "he would see what he could do." After Christmas, 1972, appellant had not "caught up." She then sought legal counsel and made arrangements to meet appellant for purposes of presentment.

On January 19, 1973, she and appellant met at a location in Houston at which time she presented each of the original notes and told him she was accelerating the notes. In reply, appellant stated, "I didn't know you could do that." Appellee then said, "I think I can  .  .  ." and referred appellant to the acceleration clause in the notes. There was testimony to the effect that appellant offered to discount the notes and that the appellee refused, demanding the full amount.

Thereafter, she authorized her attorney to send Mr. McElreath, the appellant, a formal notice of her election to accelerate maturity. This was done by letter dated January 22, 1973. Suit was thereafter filed on January 24, 1973.

The appellant, who is a certified public accountant, testified that he mailed checks for the August 5th installment on August 31st, the September 5th installment on October 2nd, the October 5th installment payment, together with the November 5th installment, on November 6th, and the December 5th installment on December 7th. He further testified that in each instance he enclosed a specific note installment check with a child support payment check in one envelope, which he personally addressed,

stamped, and placed into the United States Mail.

Appellant also testified that prior to the meeting with appellee on January 19, 1973, he had never had a telephone conversation with his former wife concerning the fact that she had not received the August and September installments on which he allegedly defaulted in payment; that when the appellee presented the notice demanding payment on January 19, 1973, he was "bewildered"; that the appellee made no mention of overdue installments on the notes at the meeting but admitted he did ask whether or not she would take a "discount" if he paid the note in full; that none of the checks written to appellee for note installment payments here in question had been returned to him in the mail.

He further testified that on the evening of January 19, 1973, he asked his current wife, who kept the check registry on their personal account, about the status of the installment checks. She then advised him that there were four outstanding checks to his former wife, the appellee, which had never cleared their account. Thus, as of the evening of January 19, 1973, the appellant knew that the checks he had written and allegedly mailed to appellee for the $150 note installments for August, September, November, December of 1972 and January of 1973 were still outstanding and had not cleared his account.

He testified that on January 29, 1973, he was able to make good the delinquent installment payments on the note and was ready to pay them out of the outstanding checks; that he thereafter communicated this offer to appellant's attorney.

The trial court found that appellant failed to make installment payments under the note in question for the months of August and September, that he did make the October 1972 installment, but "thereafter made no payment whatsoever . . ." on the note in question "and was accordingly in default." The trial court found as a fact and concluded as a matter of law that subsequent to appellant's failure to pay the August and September installment pay-

ments that appellee "communicated express and unambiguous demands by telephone to Defendant (appellant) on two occasions requesting payment of the delinquent installment payments" and that such demands were still viable at the time of plaintiff's exhibition and presentment of the note on January 19, 1973.

As to the adequacy of demand at the meeting of the parties on January 19, 1973, the Court found that appellant knew, or should have known, that he was being requested to pay in full the delinquent installments, that he knew or should have known that the installment payments due had not been paid, that he understood or should have understood that her demand meant that he must pay the delinquent installments owing, and that under all the circumstances and in regard to his knowledge of the delinquencies, the demand by appellee on January 19, 1973, was meaningful and "in substantial compliance with the legal requirements of a demand."

More directly, the court found that in addition to the two prior telephone demands appellee's display of both the notes and the demand for payment constituted in every manner a proper presentment and proper demand. Additionally, the court specifically found that appellee's failure to expressly specify the delinquent installment payments and to request payment thereof by appellant at the January 19 meeting "was immaterial and did not affect the sufficiency of her demand for payment."

The court further found that appellee gave proper and timely notice of her election to accelerate maturity of the indebtedness under the note; that appellant was afforded "a reasonable and sufficient time to make payment" after appellee's demands "before exercising her right to elect to accelerate the maturity of the indebtedness owing under" the note.

Even though the appellant alleged in his amended answer and so testified upon the trial of this cause that he was "ready, willing and able" to pay the past-due payments owing, the trial court found that appellant, subsequent to demand, "did not make or

tender the past-due payments owing to the plaintiff [appellee] on" the note. The trial court further found that "the credibility of plaintiff's [appellee] testimony was superior to and more believable than the testimony of the defendant [appellant] in this cause." The trial court found that because of appellee's acceptance of the October 5, 1972 installment payment under the note she was not estopped to accelerate the maturity of the note.

The trial court made thirty-seven specific findings of fact and conclusions of law. To mention each of them would unnecessarily and unduly lengthen this opinion.

■ At the conclusion of the direct examination of Mrs. Jean McElreath, the only witness called by appellee to testify, appellant filed a motion for judgment which was overruled by the trial court. Upon oral argument appellant contended that this court could only consider the testimony up to the time of the filing of his motion for judgment. This contention is without merit. The appellant did not rely upon his motion but after it was overruled proceeded to introduce testimony. The right to challenge denial of the motion for judgment was waived by the subsequent introduction of evidence on the part of appellant-defendant. *Vermillion Construction Co. v. Fidelity & Deposit Company of Maryland,* 526 S.W.2d 744, 748 (Tex.Civ.App.-Corpus Christi 1975, no writ); *Shoppers World v. Villarreal,* 518 S.W.2d 913, 918 (Tex.Civ.App.-Corpus Christi 1975, writ ref'd n.r.e.); *Edelstein v. Lehmann,* 452 S.W.2d 49, 52 (Tex.Civ.App.-San Antonio 1970, writ ref'd n.r.e.); *Texas Construction Rentals, Inc. v. Harrison,* 410 S.W.2d 482, 484 (Tex.Civ.App.-Waco 1967, writ ref'd n.r.e.); *St. Louis Southwestern Ry. Co. of Texas v. Douthit,* 208 S.W. 201, 204 (Tex.Civ.App.-Dallas 1919, writ ref'd); *Savage v. Mowery,* 166 S.W. 905 (Tex.Civ.App.-San Antonio 1914, n.w. h.); *El Paso & Southwestern Co. v. Hall,* 156 S.W. 356, 358 (Tex.Civ.App.-San Antonio 1913, n.w.h.); 57 Tex.Jur.2d sec. 575, p. 334.

■ It was the province of the trier of the facts to pass upon the credibility of the witnesses and the weight to be given their testimony, and to resolve conflicts and inconsistencies in the testimony of any one witness, as well as the testimony of different witnesses. The trial court as the trier of the facts had a right, which was exercised, to reject the testimony of appellant and give credence to that given by the appellee. *Scott v. Gibson Oil Co.,* 471 S.W.2d 924, 926 (Tex.Civ.App.-Tyler 1971, n.w.h.); *Schwab v. Stewart,* 387 S.W.2d 939, 943 (Tex.Civ.App.-Amarillo 1965, writ ref'd n.r.e.), 390 S.W.2d 752; *Peck v. Century Concrete Products, Inc.,* 375 S.W.2d 459, 462 (Tex.Civ.App.-Fort Worth 1964, writ ref'd n.r.e.); *Southland Life Insurance Company v. The Aetna Casualty and Surety,* 366 S.W.2d 245, 248 (Tex.Civ.App.-Fort Worth 1963, writ ref'd n.r.e.); *Martin v. J. S. Hunt Lumber Co.,* 180 S.W.2d 956 (Tex.Civ.App.-Waco 1944, n.w.h.); *Hunt v. Joske Bros. Co.,* 300 S.W. 201, 203 (Tex.Civ.App.-San Antonio 1927, writ dism'd).

■ There is ample evidence to support the trial court's findings of fact and conclusions of law. We have considered all of appellant's points of error and they are overruled.

Judgment of the trial court is affirmed.